William Howard HUTCHISON, Jr., et
ux., Plaintiffs-Appellees,

v.

Robert L. PYBURN et ux., et al.,
Defendants-Appellants *.

Court of Appeals of Tennessee,
Middle Section.

April 29, 1977.

Rehearing Denied June 10, 1977.

* No petition for certiorari filed. Approved for publication by Presiding Judges of the Three
Divisions of the Court.

Richard D. Taylor, Glasgow, Adams, Taylor & Philbin, Nashville, for appellants.

Frank Grace, Jr., Willis & Knight, Nashville, for appellees.

## OPINION

DROWOTA, Judge.

This is a case involving fraud in the sale of realty in which plaintiffs-vendees were awarded both rescission of the deed and punitive damages by the Chancery Court of Davidson County. Since the case is before us without a bill of exceptions, our recitation of the facts follows the allegations of plaintiffs-appellees and the findings of the Chancellor.

In January of 1973, plaintiffs William and Jo Lynn Hutchison purchased a house and lot from defendants Robert and Carol Pyburn for $24,000.00. Of this amount, $23,500.00 represented a loan from Home Federal Savings & Loan Association which was secured by a deed of trust. Defendant Jack Williams built the house and sold the property to the Pyburns, and his brother, defendant John Williams, was real estate agent for the Pyburns in the sale of the property to plaintiffs. In July of 1973, plaintiffs noticed seepage from their sewage disposal system, investigated, and discovered that their property had not been approved as a home site by the Metropolitan Board of Health because it lacked the requisite topsoil to sustain the septic tank and overflow field needed for sewage dis-

posal. Further, the Metropolitan Department of Codes Administration had been informed of the problem, and had issued a building permit to defendant Jack Williams only by mistake. Evidently defendant Pyburn had become aware of the sewage problem after purchasing the property from Williams and had prevailed on Williams to release him from his obligation to purchase it, whereupon Pyburn and Williams negotiated the sale to plaintiffs.

Plaintiffs brought suit, alleging that the defendants Pyburn and Williams knew of the property's condition and that there was no practical means of correcting it at the time of the sale. They charged that defendants' failure to inform them of the sewage problem amounted to fraud and deceit, and that the condition of the property represented a breach of the warranties contained in the deed. The Chancellor dismissed the case against defendant John Williams, but entered a decree in favor of plaintiffs against the Pyburns and Jack Williams. The decree allowed plaintiffs rescission of the contract, incidental damages in the form of expenses incurred in connection with the property, moving costs, and attorney's fees, from all of which was deducted the reasonable rental value of the property for the period of plaintiffs' occupancy. In addition to the sum due plaintiffs in incidental damages, which was set at $3,168.94, the Chancellor assessed $5,000.00 in punitive damages against the defendants and made a specific finding that defendants' misrepresentation was fraudulent. Defendants now appeal from the decree of the Chancellor, presenting two assignments of error to support their contention that the award of punitive damages was improper.

Initially we must reject defendants' second assignment of error, in which they argue that punitive damages were improperly awarded because plaintiffs made no attempt to mitigate their damages. The contention is based on several depositions sent to this Court by order of the Chancellor dated July 9, 1976. The trial court lost jurisdiction of this case on July 6, 1976,

sixty days after entry of its final decree on May 7. For this reason the Chancellor's order was a nullity and we cannot consider the depositions. Further, had the depositions been sent here under a valid order, we would still be precluded from considering them, for there is no known procedure for this Court to review certain depositions without a bill of exceptions. It is elementary that a bill of exceptions cannot be considered if it does not contain all the evidence introduced in the case. See *Ransom v. State,* 116 Tenn. 355, 96 S.W. 953 (1906). *A fortiori,* then, we could not consider the incomplete testimony of several depositions in a case such as this, wherein no bill of exceptions has been filed at all. Since the pleadings and memorandum opinion of the Chancellor, the only items that remain available for our consideration in this case, contain no mention of the issue of mitigation of damages, this assignment of error must be overruled.

■ Defendants also assert that the trial court erred in awarding punitive damages for misrepresentations incident to a contract when rescission of the contract and deed was also decreed. The absence of a bill of exceptions is also important here, for it means that we cannot review legal conclusions based upon findings of fact by the Chancellor but are limited to a review of those errors not involving examination of any facts. See *Fletcher v. Russell,* 27 Tenn. App. 44, 177 S.W.2d 854, 859 (1943). We must also presume conclusively that every fact admissible under the pleadings was found favorable to plaintiffs-appellees. *Dattell v. Tidwell,* 512 S.W.2d 550, 551 (Tenn.1974). Accordingly, our review of the punitive damages issue must be confined to the purely legal question of whether such damages may be awarded in a case in which equitable rescission is also decreed.

■ Punitive or exemplary damages are awarded to punish a defendant for his wrongful conduct and to deter others from similar conduct in the future. *Liberty Mutual Ins. Co. v. Stevenson,* 212 Tenn. 178, 368 S.W.2d 760 (1963); *Booth v. Kirk,* 53 Tenn.App. 139, 381 S.W.2d 312 (1963).

They are awarded in cases of fraud, malice, gross negligence, or oppression, or in similar cases involving wilful misconduct. *Inland Container Corp. v. March,* 529 S.W.2d 43 (Tenn.1975); *Liberty Mutual Ins. Co. v. Stevenson,* supra. Such damages relate to the nature of the defendant's actions in inflicting or causing the injury rather than to the extent of the injury that results. *Inland Container Corp. v. March,* supra; *Schwab v. Int'l Ass'n of Bridge Workers,* 482 S.W.2d 143 (Tenn.App.1972).

■ In Tennessee it is established that courts of equity are empowered to award punitive damages. *Jones v. Morrison,* 62 Tenn.App. 50, 458 S.W.2d 434 (1970); *Gill v. Godwin,* 59 Tenn.App. 582, 442 S.W.2d 661 (1967); *Kneeland v. Bruce,* 47 Tenn.App. 136, 336 S.W.2d 319 (1960). *Kneeland* was an injunction action by a plaintiff who had been fraudulently induced to sign two mortgage notes and trust deeds and had consequently lost her property to a *bona fide* purchaser. Both compensatory and punitive damages were awarded. The court upheld the latter award with the statement that Chancery Courts have jurisdiction to give punitive damages "in proper cases." 336 S.W.2d at 325. In *Gill,* the defendant fraudulently induced the plaintiff to undertake an obligation, secured by a mortgage, to have defendant erect a building on plaintiff's vacant lot. Defendant's only purpose in doing so was to take the lot by foreclosure. In upholding an award of punitive damages, the court found that the authority of Chancery Courts to make such an award was established "in actions involving fraud." 442 S.W.2d at 663. Thus, in Tennessee an award of punitive damages is permissible in equity, and fraud is proper conduct by defendant on which to base such an award.

■ One objection raised to the award of punitive damages in this case is that it is inconsistent with rescission of the deed under the doctrine of election of remedies. That doctrine estops a plaintiff who has clearly chosen to pursue one of two inconsistent and irreconcilable remedies from later resorting to the other. *Barger v.*

*Webb*, 216 Tenn. 275, 391 S.W.2d 664 (1965); *Barnes v. Walker*, 191 Tenn. 364, 234 S.W.2d 648 (1950). The "essential element" here is "that the remedies be inconsistent." *Holder v. Martin*, 219 Tenn. 165, 407 S.W.2d 461, 465 (1966). A good example of such inconsistency is furnished by *Barger*, supra, in which plaintiff's acceptance of a settlement in her suit for conversion against a bank that had repossessed her property was held an election that estopped her from later suing for a statutory remedy under the statute that then regulated repossession under conditional sales contracts. Since allowance of the statutory remedy would have provided double redress for a single wrong, it was found inconsistent with the cause of action for conversion in which plaintiff had gained a settlement. There is no such inconsistency, however, between the remedy of rescission and an award of punitive damages. The latter, as we have already noted, is designed to penalize and deter, and results from the nature of defendant's conduct rather than from the harm it causes. The character of punitive damages, then, is in no wise inconsistent with rescission and its concomitant remedies of restitution and incidental damages. The latter are all aimed at *redressing* the harm done the plaintiff and, while this means they may be considered inconsistent with a remedy such as compensatory damages, which also aims at redress but by a different method, they may not be so considered with respect to the *deterrent* sanction of punitive damages. Thus, plaintiffs' choice of rescission as a means of redress is not inconsistent with their request for punitive damages and does not estop them from making that request.

Similarly, punitive damages do not conflict with the theoretical aim of equitable rescission, which is to return the parties to the status in which they were prior to the transaction. See *Simmons v. Evans*, 185 Tenn. 282, 206 S.W.2d 295, 297 (1947). That aim is simply one approach to redressing the wrong done to plaintiff, an approach that differs from that of compensatory damages, which are intended to redress the wrong by directly compensating the plaintiff for what he has lost. But again, punitive damages are not intended to redress the plaintiff's wrong, but to make an example of the defendant's conduct. Since they thus relate to considerations totally different from those of rescission, punitive damages neither frustrate rescission's redressing of plaintiff's wrong by return of the parties to the *status quo*, nor are they inconsistent with it.

 Cases often announce the rule that there must be proof of "actual damages" before punitive damages may be awarded. *Liberty Mutual Ins. Co. v. Stevenson, supra; Allen v. Melton*, 20 Tenn.App. 387, 99 S.W.2d 219 (1936). The cases are unclear, however, as to the meaning of "actual damages" in this context. It has been logically suggested that the phrase should mean no more than that the plaintiff cannot get punitive damages without proving a valid cause of action, that is, without showing that he has been legally injured in some way,[1] which is really a roundabout way of saying that there can be no cause of action for punitive damages alone. See Dobbs, Remedies § 3.9 at 208–10 (1973); 22 Am. Jur.2d *Damages* § 241 (1965). However, probably because injury to the plaintiff is

---

1. This interpretation of the actual damages requirement is supported by the very recent opinion of our Supreme Court in *Whittington v. Grand Valley Lakes, Inc.*, 547 S.W.2d 241 (Tenn.1977). There, the Court held that an award of compensatory damages for trespass and injury to land was unjustified, because the defendant had already repaired the damage he had done to the land. Nevertheless, the Court upheld an award of punitive damages against the defendant.

After briefly reviewing the cases establishing the actual damages requirement in Tennessee

and alluding to the rules followed in other jurisdictions, the Court in *Whittington* said that "[t]he underlying consideration seems to be that there must be *some actual loss supported by proof.*" 547 S.W.2d at 243 (emphasis added.) The Court did not, however, "feel any need to alter, erode or modify prior Tennessee case law," because it found in the case before it that "actual damages were clearly demonstrated" and had been "pre-paid . . . by the [defendant's] expenditure of time, effort and money in restoration." *Id.*

asserted as a cause of action for compensatory damages in most cases in which punitive damages are asked, courts sometimes seem to view the "actual damages" rule as requiring proof or award of compensatory damages as a basis for punitive damages. Such an impression is created in *Liberty Mutual,* supra, wherein our Supreme Court stated that "[f]or one to obtain . . . [punitive] damages it is necessary . . . that a predicate must have first been laid wherein actual damages have been awarded." 368 S.W.2d at 761. On the other hand, in *Allen,* supra, which was cited by the court in *Liberty Mutual,* this Court spoke of "actual damage," "actual loss," and the absence of a right to sue for punitive damages alone in stating the rule. *Allen* thus appears to lean more in the direction of an approach requiring only proof of a valid cause of action. That approach, applied broadly, would allow recovery of punitive damages if plaintiff, in addition to showing the requisite degree of bad conduct and intent by defendant, could merely prove his entitlement to injunctive relief or nominal damages. But we need not go so far here in construing "actual damages" not to mean strictly an award of compensatory damages. Returning to the case before us, we hold simply that plaintiffs' proof of their entitlement to rescission of the deed, refund of the purchase price, and incidental damages such as moving expenses, shows sufficient harm and loss to them to satisfy the "actual damages" prerequisite to recovery of punitive damages in Tennessee.

■ Finally, defendants point to a proposition which we agree is the general rule in Tennessee and elsewhere: punitive damages may not be recovered in an action for breach of contract. See *Bland v. Smith,* 197 Tenn. 683, 277 S.W.2d 377 (1955); *Johnson v. Woman's Hospital,* 527 S.W.2d 133 (Tenn. App.1975). This case, however, is not one for breach of contract, for plaintiffs asked that the contract be made a nullity by rescission. Further, the pleadings and memorandum of the trial court indicate that the main thrust of the action is a claim of fraud and misrepresentation against all the defendants, although an additional claim of breach of warranty was asserted against the Pyburns, with whom plaintiffs were in privity. Thus, regardless of any overtones of contract that may appear in this suit, there also clearly exists here a cause of action against all defendants for the sort of tortious misconduct required as a basis for recovery of punitive damages in cases like *Inland Container,* supra. For this reason, such a recovery cannot be defeated by the rule that punitive damages are unavailable in contract actions.

■ We are aware of no case ruling on the availability of punitive damages in the precise context of the remedy of rescission and incidental damages presented here, and we realize that the Tennessee cases holding punitive damages available in equity also have generally been ones in which ordinary compensatory damages were awarded. See *Jones,* supra; *Gill,* supra. After examining the question closely, however, we are unable to perceive any good reason to preclude the award of punitive damages in a suit for equitable rescission and incidental damages such as this one. Indeed, logic compels us to hold that, as a matter of law, punitive damages are available in such a case if the plaintiff can demonstrate the requisite degree of bad conduct and intent on the part of the defendant.[2] Since we

---

2. Our holding is supported by some law that has emerged fairly recently in other jurisdictions. For example, in *Village of Peck v. Denison,* 92 Idaho 747, 450 P.2d 310 (1969), the court allowed an award of punitive damages when the primary remedy against defendants was injunction, reasoning that proof of a right to equitable relief insures that a legally protected interest has been invaded as well as does proof of entitlement to actual damages.

California has reached a result similar to our result in this case under a statute declaring that there is no inconsistency between rescission and damages and allowing complete relief in rescission cases, as long as duplicate recovery is not permitted. Cal.Civ.Code § 1692 (West). *See, e. g., Ward v. Taggart,* 51 Cal.2d 736, 336 P.2d 534 (1959); *Esparza v. Specht,* 55 Cal. App.3d 1, 127 Cal.Rptr. 493 (1976); *Mahon v. Berg,* 267 Cal.App.2d 588, 73 Cal.Rptr. 356

have no bill of exceptions by which to review the correctness of the Chancellor's findings in regard to defendants' conduct and intent, we must presume that those elements possessed that degree of culpability needed to justify an award of punitive damages, and that plaintiffs were entitled to such an award.

Affirmed.

SHRIVER, P. J., and TODD, J., concur.

## ON PETITION TO REHEAR

Defendants have filed a petition to rehear, supported by a succinct argument, and plaintiffs have replied. Both sides agree that the purpose of a petition to rehear is to call the Court's attention to authority overlooked rather than to reargue the case. See *Abernathy v. Chambers*, 482 S.W.2d 129 (Tenn.1972); *Knox County v. Moncier*, 224 Tenn. 361, 455 S.W.2d 153 (1970). The argument defendants now press again asserts the inconsistency of punitive damages with rescission and the preclusion of the former by election of the latter. Since defendants raise nothing that was not considered on our original hearing of the case, the petition to rehear must be denied.

In denying the petition, we emphasize that in making our decision in this case we gave careful consideration to the arguments persuasively made by defendants that the rescission theory of returning the parties to the *status quo ante* is inconsistent with an award of punitive damages. However, we believed and continue to believe that the merits and logic of that technical approach are outweighed by those of the approach we have taken, which is that punitive damages and rescission are not inconsistent because the fundamental purpose of the former, to punish the defendant's actions, is not inconsistent with the fundamental purpose of the latter, to redress the plaintiff's injury. In other words, we think that in a rescission action the theory of placing the parties in the *status quo ante* and ignoring their negotiations ought to be applied only in assessing the redress due the plaintiff for his injury, and that punitive damages are punishment for the defendant rather than redress to the plaintiff and should be considered independently of the rescission theory. In addition, we believe that our approach advances two related and sound policies. One is not unduly to burden the plaintiff, who is the wronged party, in making his choice of redress between rescission and compensatory damages by forbidding him to couple a request for punitive damages with rescission, which may often provide a smaller recovery than compensatory damages to begin with. The other is to prevent the plaintiff's choice of redress from allowing the defendant, who is the wrongdoer, to escape the punishment that the law of punitive damages imposes for certain types of conduct.

In sum, our opinion in this case was the result of a careful consideration of many factors, among which were all the points defendants now raise in their petition to rehear. The petition is denied.

SHRIVER, P. J., and TODD, J., concur.

(1968); *Millar v. James*, 254 Cal.App.2d 530, 62 Cal.Rptr. 335 (1967).

In *Z. D. Howard Co. v. Cartwright*, 537 P.2d 345 (Okl.1975), the court allowed buyers rescission and punitive damages for fraudulent misrepresentation under U.C.C. § 2–721.

Other cases lend some indirect support to our approach. *See, e. g., Holden v. Construction Machinery Co.*, 202 N.W.2d 348 (Iowa 1972) (punitive damages allowed in conjunction with restitution in stockholder's derivative suit); *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567 (Tex.1963) (punitive damages allowed along with disgorgement of profits obtained in violation of fiduciary duty); *Seegers v. Spradley*, 522 S.W.2d 951 (Tex.Civ.App. 1975) (choice of equitable remedy of specific performance does not, of itself, preclude punitive damages).