IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 6, 2018 Session

## ANGELA STEVENS, ET AL. v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission**
**No. T20140324, T20140325      Robert N. Hibbett, Commissioner**

——————————————————

### No. M2017-01114-COA-R3-CV

——————————————————

State of Tennessee appeals the Claims Commission's award of damages to a mother and daughter who were injured in an automobile accident with a state employee driving a state-owned vehicle. Discerning no error in the award of damages, we affirm the decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Tennessee Claims Commission Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which W. NEAL MCBRAYER and KENNY W. ARMSTRONG, JJ. joined.

Herbert S. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and Dawn Jordan, Senior Deputy Attorney General, for the appellant, State of Tennessee.

Brian Dunigan, Goodlettsville, Tennessee, for the appellee, Angela Stevens.

## OPINION

On August 22, 2013, Angela Stevens ("Mother") and her daughter, Lanesia ("Daughter"), were injured when John Dawkins, a Tennessee Department of Transportation employee, driving a state-owned vehicle in the course of his employment, turned in front of the vehicle in which they were riding, causing a collision and resulting in personal injuries and property damage to them. Mother and Daughter filed a claim with the Claims Commission, and the case proceeded to a hearing. In the course of trial Mother and Daughter introduced, without objection, the undiscounted bills for their medical treatment, totaling $13,497.78 for Mother and $2,838.00 for Daughter. The State introduced evidence that two of Mother's bills had been paid at discounted rates, resulting in a reduction of $3,973.77; the State took the position that the collateral source

rule,[1] which prevents a defendant from using the fact that a medical expense has been forgiven or reduced to reduce the defendant's financial liability, was abrogated by Tennessee Code Annotated section 9-8-307(d) (2017).[2] The Commission awarded Mother $33,497.78[3] and Daughter $7,838.00.[4] The State appeals, contending that the collateral source rule "does not prevent using the amount of medical expenses actually paid, instead of the amount billed, as the correct measure of damages for medical expenses incurred. This is because the amounts by which those billed amounts are adjusted or 'discounted' do not represent economic damages to the claimant."

While the case was pending on appeal, our Supreme Court decided *Dedmon v. Steelman*, 535 S.W.3d 431 (Tenn. 2017), in which the court "decline[d] to alter existing law in Tennessee," and held that "defendants are precluded from submitting evidence of discounted rates accepted by medical providers from the insurer to rebut plaintiffs' proof that the full, undiscounted charges are reasonable." The question before us is the extent to which *Dedmon* applies in actions arising under the Claims Commission Act. This question was before this court, indeed the same panel of judges, in *Estate of Tolbert v.*

---

[1] The collateral source rule was explained in *Fye v. Kennedy*:

> In Tennessee, the focus has always been on the "reasonable" *value* of "necessary" services rendered. A plaintiff must prove that the services rendered were "necessary" to treat the injury or condition in question; and, even if the services were necessary, that the charges in question were "reasonable." The collateral source rule precludes a defendant from attempting to prove that a "reasonable" charge for a "necessary" service actually rendered, has been, or will be, paid by another—not the defendant or someone acting on his or her behalf—or has been forgiven, or that the service has been gratuitously rendered. However, a defendant is permitted to introduce relevant evidence regarding necessity, reasonableness, and whether a claimed service was actually rendered.

991 S.W.2d 754, 764 (Tenn. Ct. App. 1998) (emphasis in original).

[2] The portion of Tennessee Code Annotated section 9-8-307 pertinent to this case states:

> (d) The state will be liable for actual damages only. No award shall be made unless the facts found by the commission would entitle the claimant to a judgment in an action at law if the state had been a private individual.

[3] The award was broken down as follows:

| | |
|---|---|
| Medical expenses: | $13,497.78 |
| Vehicle loss: | 5,000.00 |
| Pain and suffering (past): | 10,000.00 |
| Pain and suffering (future): | 5,000.00 |

[4] Daughter's award was broken down as follows:

| | |
|---|---|
| Medical expense: | $2,838.00 |
| Pain and suffering: | 5,000.00 |

2

*State of Tennessee*, No. M2017-00862-COA-R3-CV, 2018 WL _____ (Tenn. Ct. App. February 28, 2018). We see no distinction between the relevant facts in *Estate of Tolbert* and those before us and, consequently, incorporate Section B of that opinion herein:

> In the wake of the *Dedmon* decision, the State argues that the collateral source rule, which arises from common law, has been statutorily abrogated in personal injury actions under the Tennessee Claims Commission Act. *See* Tenn. Code Ann. § 9-8-307(d); *Dedmon*, 535 S.W.3d at 440. "Tennessee is a common law state, and so much of the common law as has not been abrogated or repealed by statute is in full force and effect." *Powell v. Hartford Acc. & Indem. Co.*, 398 S.W.2d 727, 730 (Tenn. 1966). As noted by our supreme court, Tennessee has partially abrogated the collateral source rule in two limited circumstances: health care liability actions and workers' compensation cases. *Dedmon*, 535 S.W.3d at 445-46.

> The General Assembly "unquestionably has the constitutional and legislative authority to change the common law" through its statutory enactments. *Heirs of Ellis v. Estate of Ellis*, 71 S.W.3d 705, 712 (Tenn. 2002). But the mere existence of a statute is not enough. *Cellco P'ship v. Shelby Cnty.*, 172 S.W.3d 574, 591 n.7 (Tenn. Ct. App. 2005). We construe statutes in derogation of common law strictly. *Davenport v. Chrysler Credit Corp.*, 818 S.W.2d 23, 28 (Tenn. Ct. App. 1991). "Statutes do not alter the common law any further than they expressly declare or necessarily require." *Id.* Without a clear indication in the statute, we will not presume that the General Assembly intended to change the common law. *See Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 423 (Tenn. 2013).

> The State's abrogation argument relies exclusively on subsection (d) of the Claims Commission Act, which provides, in relevant part:

>> The state will be liable for actual damages only. No award shall be made unless the facts found by the commission would entitle the claimant to a judgment in an action at law if the state had been a private individual. The state will not be liable for punitive damages and the costs of litigation other than court costs. . . .

> Tenn. Code Ann. § 9-8-307(d). According to the State, the General Assembly chose to use the term "actual damages" rather than "compensatory damages" thereby limiting the recovery of a claimant in a

3

personal injury action against the State to actual amounts paid for medical expenses.

Although "actual damages" is not defined in the Claims Commission Act, Tennessee courts have generally equated "actual damages" with "compensatory damages." *See, e.g.*, *Whittington v. Grand Valley Lakes, Inc.*, 547 S.W.2d 241, 243 (Tenn. 1977) (discussing "general rule in this jurisdiction that actual or compensatory damages must be found as a predicate for the recovery of punitive damages"); *Emerson v. Garner*, 732 S.W.2d 613, 614-15 (Tenn. Ct. App. 1987) (referring to "actual or compensatory damages"); *Caccamisi v. Thurmond*, 282 S.W.2d 633, 645-46 (Tenn. Ct. App. 1954) (holding jury verdict, which "allowed a recovery of $5,000 actual or compensatory damages, and $5,000 punitive damages" was excessive); *see also Damages*, Black's Law Dictionary (10th ed. 2014) (treating "actual damages" and "compensatory damages" as synonymous terms). And when our courts have been called upon to interpret the term "actual damages" in other statutes, they have construed it to mean "compensatory damages." *See Robinson v. Fulliton*, 140 S.W.3d 312, 317 (Tenn. Ct. App. 2003) (treating the award of actual damages under the Wiretapping and Electronic Surveillance Act of 1994 as compensatory damages); *Gifford v. Premier Mfg. Corp.*, No. 18, 1989 WL 85752, at *6 (Tenn. Ct. App. Aug. 1, 1989) (holding that "actual damages and compensatory damages are synonymous, and that the legislature's use of the term actual damages indicated its intent that a plaintiff under [the Human Rights Act] is entitled to recover all items of damages normally included in the definition of compensatory damages"); *Taff v. Media Gen. Broad. Servs., Inc.*, No. 32, 1986 WL 12240, at *5 (Tenn. Ct. App. Nov. 3, 1986) (construing "actual damages" in Tennessee Human Rights Act as synonymous with "compensatory damages").

Given these precedents, we find the State's contention that the General Assembly intended for "actual damages" to mean "actual amount paid" rather than "compensatory damages" unpersuasive. When a statute contains a term with a well-recognized common law meaning, we will apply the common law meaning unless a different meaning is apparent from the context or general purpose of the statute. *See Lively v. Am. Zinc Co.*, 191 S.W. 975, 978 (Tenn. 1917); *see also Taylor v. State*, No. 02A01-91090BC-00182, 1991 WL 268357, at *2-3 (Tenn. Ct. App. Dec. 18, 1991) (stating that when the General Assembly enacted the Claims Commission Act it was well aware of the established meaning of the term "damages" as "the pecuniary consequences which the law imposes for the breach of some duty or the violation of some right.") (quoting 22 Am. Jur. 2d, *Damages* § 1

4

(1988)).[5]  Nothing in the Claims Commission Act indicates that the General Assembly intended to deviate from the well-recognized common law meaning of "actual damages."  Thus, the language used in subsection (d) falls far short of the clear expression of legislative intent necessary to abrogate the collateral source rule.

Our conclusion is buttressed by a comparison of the language used in subsection (d) to the language the General Assembly used to abrogate the collateral source rule in health care liability actions.  *See* Tenn. Code Ann. § 29-26-119 (2012).  There, the General Assembly expressly limited recoverable damages to:

> actual economic losses suffered by the claimant by reason of the personal injury, including, but not limited to, cost of reasonable and necessary medical care, rehabilitation services, and custodial care, loss of services and loss of earned income, but only to the extent that such costs are not paid or payable and such losses are not replaced, or indemnified in whole or in part, by insurance provided by an employer either governmental or private, by social security benefits, service benefit programs, unemployment benefits, or any other source except the assets of the claimant or of the members of the claimant's immediate family and insurance purchased in whole or in part, privately and individually.

*Id.*  If the General Assembly had intended to limit the State's liability under the Claims Commission Act to "actual amounts paid," it could have said so.  Without a clear expression of legislative intent, we cannot presume that the General Assembly intended to abrogate the collateral source rule in personal injury actions before the Claims Commission.  *See Shore*, 411 S.W.3d at 423.  We conclude that the collateral source rule precluded consideration of the amounts deducted as adjustments to the claimant's medical bills based on their insurance.  *See Dedmon*, 535 S.W.3d at 467.

*Estate of Tolbert*, 2018 WL at *___.

---

[5]  The issue in *Taylor* was whether the monetary cap on "damages" in subsection (e) of the Claims Commission Act prevented the Claims Commission from awarding post-judgment interest.  *Taylor*, 1991 WL 268357 at *1.

5

## CONCLUSION

For the foregoing reasons we affirm the decision of the Tennessee Claims Commission.

_____
RICHARD H. DINKINS, JUDGE